# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 16 CR 288 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| ADRIAN RUSHIN | ) | |
| | ) | |

## **OPINION AND ORDER**

After discovering approximately five kilograms of a substance containing cocaine stashed in a compartment in the rear passenger door of Defendant Adrian Rushin's Pontiac Grand Prix during a traffic stop, the government charged Rushin with one count of possessing a controlled substance, with an intent to distribute, in violation of 21 U.S. § 841(a)(1). Illinois State Troopers Jose Montes and Edward Nowak found the cocaine with the help of Nowak's canine partner Jake. Rushin now moves to suppress [52] the Troopers' discovery of the drugs. He argues that the cocaine was the fruit of an unlawful seizure because the Troopers impermissibly extended the length of the otherwise valid traffic stop in order to have Jake contemporaneously perform the free air sniff of his car. Rushin also moves to suppress the drugs because, he argues, the government has not established Jake's reliability as a drug sniffing dog. The Court held a status hearing on the motion to suppress on September 20, 2017, and the parties agreed that the Court should address only the first basis for suppression at this time and that additional discovery may be necessary before the Court can rule on Jake's reliability. Therefore, the Court limits its ruling to Rushin's first basis for suppression.

Because the Court finds that the actual dog sniff occurred contemporaneously with Montes completing the initial, traffic-related purpose of the stop, the dog sniff did not

impermissibly extend the length of the stop. Additionally, because the briefing Montes provided Nowak upon his arrival on the scene was reasonably related to the initial traffic stop and was necessary for facilitating officer safety and because the portion of the discussion relating to the dog sniff was limited in time, the Court further finds that the briefing did not impermissibly extend the length of the stop beyond the time required to complete the tasks relating to the original traffic violation and issue the warning citation. Finally, because Montes' act of ordering Rushin out of the car only negligibly extended the stop and because officers may routinely ask drivers to step out of their cars during traffic stops, the Court further denies the motion to suppress on this basis. The Court, therefore, denies Rushin's motion to suppress on the basis of an illegal extended detention.

## BACKGROUND[1]

On May 25, 2011, at approximately 1:55 p.m., Trooper Montes was patrolling near the Dan Ryan Expressway in Chicago, Illinois. He received information that a gold Pontiac Grand Prix sedan with license plate number L615096 was nearby and possibly involved in narcotics trafficking. Montes then saw a car matching that description on the Dan Ryan Expressway. Montes observed the car making an improper lane change and pulled the car over.

Upon stopping the Grand Prix, Montes approached the driver. While approaching, Montes observed the driver moving around and reaching into the back seat. Once he reached the driver's window, Montes asked Rushin for his driver's license and proof of insurance as well as who owned the car. Rushin provided the documentation and stated that it was his car. During

---

[1] The facts in this section are taken from Complaint (Doc. 1) and Trooper Montes' and Trooper Novak's reports filed after completing the traffic stop at issue. Docs. 60-1 and 60-2. The parties do not dispute any of the material facts; therefore, an evidentiary hearing on this issue is unnecessary. *See United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) ("District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion.").

2

this exchange, Rushin appeared very nervous; he began sweating profusely, his hands were shaking, and his jugular vein was visibly pulsing on his neck. Montes asked Rushin where he was headed, to which Rushin responded that he was going home.

At the same time, Trooper Nowak was close by and heard over his radio that Montes was conducting a traffic stop. So, he headed to the scene to provide assistance. Nowak arrived while Montes was initially speaking Rushin. Shortly thereafter, Montes finished speaking to Rushin and briefed Nowak on the situation. Montes told Nowak "the particulars of the traffic stop, indicators observed during the traffic stop and the behavior of the driver. Montes requested a walk around of the vehicle while the enforcement action of the stop was being conducted." Doc. 60-2.

Montes then completed a written warning for the traffic violation and returned to Rushin's car. Montes asked Rushin to step out of his car, which he did, and Montes explained the warning to him and had him sign it. During this interaction, Nowak had Jake perform a free air sniff of the exterior of the car. During the free air sniff, Jake indicated through body posture and breathing changes that there were narcotics near the rear door and rear quarter panel of the Grand Prix. The Troopers subsequently searched that area and discovered several bricks containing a substance they later determined to be cocaine. The Troopers then took Rushin into custody, reading him his *Miranda* rights at 2:15 p.m. The entire encounter from when Montes first pulled Rushin over to the conclusion of the arrest took approximately thirty minutes, including the transportation time from the scene of the stop to the police department.

**ANALYSIS**

Rushin moves to suppress the cocaine that Troopers Montes and Nowak found in his car following Jake's free air sniff, arguing that the Troopers impermissibly extended the length of an

otherwise lawful traffic stop in order to allow Jake to conduct the free air sniff. A seizure for a traffic violation is limited in duration to the time required to address the traffic violation and any related safety concerns. *Rodriguez v. United States*, --- U.S. ----, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (citing *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d. 605 (1985)). Such a stop "'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id.* at 1614–15 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005)). As part of a routine traffic stop, officers may engage in "ordinary inquiries incident to [the traffic] stop," such as checking the driver's license and proof of insurance, because these checks promote the same mission as the stop: "ensuring that vehicles on the road are operated safely and responsibly." *Id.* at 1615 (quoting *Caballes*, 543 U.S. at 408). However, officers may not extend a traffic stop in order to conduct an unrelated activity, such as a dog sniff. *Id.*

Rushin argues that the Troopers impermissibly extended the stop to allow for the dog sniff in two ways: first, when Montes took time to brief Nowak once Nowak arrived; and second, when Montes asked Rushin to step out of his car in order to explain the written warning and have Rushin sign it.[2] Because both of these activities are reasonably related to addressing the traffic violation and are also reasonably necessary precautions to protect officer safety, the Court finds

---

[2] Rushin does not claim that the dog sniff took place after the completion of the traffic stop and the Troopers' reports indicate that the dog sniff was contemporaneous to the investigation of the traffic violation.

4

that neither activity served to extend the stop beyond the time reasonably required to complete the needed steps in issuing the warning citation.[3]

It is not clear from the record how long it took Montes to brief Nowak, but in the context of the entire traffic stop, it appears to have been relatively short. The briefing included a description of the stop up to that point, including Rushin's suspicious behavior that Montes observed during his initial interaction with Rushin. The Troopers ended their discussion with Montes requesting that Novak conduct the free air sniff while Montes completed the traffic stop. In sum, this conversation likely did not take more than a minute or two, and the portion in which Montes asked for the free air sniff likely took only a few seconds.

Rushin's argument that the briefing was not related to the purpose of the traffic stop is unpersuasive. Nowak arrived to provide assistance to Montes and Montes acted reasonably in bringing Nowak up to speed. There is nothing in *Rodriguez* that would prevent an officer who is conducting the traffic stop from communicating relevant information to an officer who arrives later to provide assistance, thus arguably shortening the length of the stop and making the officers' actions more efficient. Further, this was a reasonable step for Montes to take under the circumstances to ensure the safety of everyone involved in the stop, including Rushin. Because Nowak arrived at the scene after Montes had already spoken to Rushin, Nowak was not aware that Rushin was acting nervously. Considering that Montes suspected Rushin of trafficking in narcotics and Rushin was behaving suspiciously, Montes acted reasonably in making the later-responding officer aware of these circumstances so that he could tailor his behavior accordingly. Actions taken to preserve officer safety are reasonably related to the purpose of a traffic stop.

---

[3] The government did not argue that reasonable suspicion (i.e., receiving description of car, license plate, and driver involved in possible narcotics trafficking, pulling over car that matched description and license plate, plus suspicious behavior from driver upon being pulled over) supported detaining Rushin beyond the time it took to complete the traffic stop in order to conduct the dog sniff and so, like the Supreme Court in *Rodriguez*, the Court will not address that issue here. *Rodriguez*, 135 S. Ct. at 1616–17.

5

*Rodriguez*, 135 S. Ct. at 1616. ("Traffic stops are 'especially fraught with danger to police officers,' *Johnson*, 555 U.S., at 330, 129 S. Ct. 781 (internal quotation marks omitted), so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely."). Courts have routinely found permissible steps taken in furtherance of officer safety that minimally prolong an otherwise lawful seizure. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331 (1977) (*De minimis* additional intrusion upon a person's liberty is reasonable "when balanced against legitimate concerns for the officer's safety."). The Court thus finds that Montes' briefing only negligibly extended the traffic stop, was related to the mission of the stop, and ensured the safety of everyone present. The Court declines to announce a rule that would require initially responding officers to keep later-responding officers in the dark as the nature of a stop and an individual's suspicious behavior, lest the officer face a civil rights lawsuit or risk having otherwise lawfully-obtained evidence suppressed. Therefore, the Court denies the motion to suppress on this basis.

Similarly, Montes did not impermissibly extend the stop when he asked Rushin to step out of the Grand Prix so he could explain the warning to Rushin and obtain Rushin's signature. Rushin does not argue that the explanation or the signature request was improper; he only challenges the order to have him step out of the car. *See* Doc. 52 at 5 ("Officer Montes unlawfully extended the [stop] . . . by asking Mr. Rushin to get out of the car for the sole purpose of explaining the warning and signing the warning, both of which could have been completed while Mr. Rushin was still in the vehicle.").

Officers may order drivers to step out of their cars during otherwise lawful traffic stops. *Mimms*, 434 U.S. at 111; *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S. Ct. 882, 884, 137 L. Ed. 2d 41 (1997) ("[A] police officer may as a matter of course order the driver of a lawfully stopped

6

car to exit his vehicle."). Montes' request that Rushin get out of his car did not extend the stop substantially beyond the time needed to explain the warning to Rushin and have him sign it. Therefore, the Court finds that Montes and Nowak did not impermissibly extend the length of the traffic stop in order to conduct the free air sniff test and denies the motion to suppress.

## CONCLUSION

For the forgoing reasons the Court denies the motion to suppress [52] on Rushin's claim of an unlawful extended detention. The parties should confer and report back to the Court on how they wish to proceed on the remaining issue of the reliability of the canine for purposes of establishing probable cause to search the car.

Dated: November 1, 2017

_____
SARA L. ELLIS
United States District Judge